**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MANUEL S. ALVAREZ,**

**Plaintiff,**

**v.** **1:06-CV-745 (FJS/RFT)**

**CHARLES HAYWARD, WILLIAM NADER, and THE NEW YORK STATE RACING ASSOCIATION, INC.,**

**Defendants.**

---

**APPEARANCES** **OF COUNSEL**

**COOPER ERVING & SAVAGE LLP** **PHILLIP G. STECK, ESQ.**
39 North Pearl Street
Albany, New York 12207
Attorneys for Plaintiff

**HARRIS BEACH PLLC** **EDWARD P. HOURIHAN, JR., ESQ.**
99 Garnsey Road **BRIAN LAUDADIO, ESQ.**
Pittsford, New York14534
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Currently before the Court is Plaintiff's motion for a preliminary injunction, in which he asks the Court to order Defendants to reinstate his New York Racing Association ("NYRA") credential and to cease barring him from his place of employment at the Saratoga Race Course. In support of his motion, Plaintiff argues that Defendants violated his rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution by "deny[ing] him his

NYRA credential, without a hearing." *See* Dkt. No. 1 at ¶ 23. Specifically, Plaintiff contends that he "had a constitutionally protected property interest in . . . his [New York State Racing and Wagering Board] license . . . [and that] Defendants' action in denying [him] his NYRA credential and barring [him] from . . . Saratoga Race Course effectively deprived [him] of . . . the benefit of his license . . . ." *See id.* at ¶¶ 21-22. Defendants oppose this motion on the ground that Plaintiff cannot demonstrate either irreparable harm or a likelihood of success on the merits of his due process claims.

## II. DISCUSSION

### A. Preliminary injunction standard

It is well-established that to obtain a preliminary injunction, a party must show

> "(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

*Buric v. Kelly*, No. 03 Civ. 9376, 2003 WL 22990082, *4 (S.D.N.Y. Dec. 18, 2003) (quoting *Tom Doherty Assocs. v. Saban Entertainment*, 60 F.3d 27, 33 (2d Cir. 1995)) (footnote omitted).

"A showing of irreparable harm is considered the 'single most important requirement' in satisfying the [preliminary injunction] standard." *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 247 (E.D.N.Y. 1998) (citations omitted). "'A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages.'" *Id.* (quotation and other citation omitted).

Furthermore, in those situations in which "the injunction at issue will either alter, rather

than maintain the status quo, or provide the movant with substantially all the relief sought, and that relief cannot be undone at trial, the injunction will be characterized as 'mandatory' rather than 'prohibitory.'" *Pinckney v. Bd. of Educ. of Westbury Union Free Sch. Dist.*, 920 F. Supp. 393, 399 (E.D.N.Y. 1996) (citing *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)). "If the injunction is 'mandatory,' the movant must make a 'clear' or 'substantial' showing of a 'likelihood of success' on the merits as opposed to a mere 'likelihood.'" *Id.* (citation omitted).

**B. Irreparable harm**

Plaintiff argues that, because he has sufficiently alleged that Defendants violated his constitutional right to due process by failing to provide him with a hearing before revoking his NYRA credential, the Court should presume that he will suffer irreparable harm absent an injunction. *See* Plaintiff's Memorandum of Law at 7 (citing *Rex, Inc. v. Kusha, Inc.*, 2001 U.S. Dist. LEXIS 2135 *4 (W.D.N.Y. 2001)) (other citation omitted).

To the contrary, Defendants assert that Plaintiff cannot establish irreparable harm because this is essentially a loss-of-employment case and "there is no automatic right to injunctive relief merely because [a plaintiff raises] allegations of constitutional violations . . . in [a] dispute[] over a loss of employment." *See* Defendants' Memorandum of Law at 7 (citing *Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir. 1988); *Jayaraj v. Scappini*, 66 F.3d 36, 38-40 (2d Cir. 1995); *Pinckney v. Board of Educ. of the Westbury Union Free School Dist.*, 920 F. Supp. 393, 400 (E.D.N.Y. 1996)).

It is well-established in this Circuit that the suspension or revocation of NYRA

credentials infringes a property interest that is protected under New York state law. *See Galvin v. New York Racing Ass'n*, 70 F. Supp. 2d 163, 172 (E.D.N.Y.), *aff'd without opin.*, 166 F.3d 1200 (2d Cir. 1998) (citing *Jacobson v. New York Racing Ass'n, Inc.*, 33 N.Y.2d 144, 149-150, 350 N.Y.S.2d 639, 642, 305 N.E.2d 765 (1973), for the proposition that "'[g]iven NYRA's "virtual monopoly power over thoroughbred racing in the State of New York," its decision to exclude a licensee from its tracks "is tantamount to barring [the licensee[]] from the only places in the State where he may ply his trade . . . ""') (citation omitted)).

Defendants do not specifically contest Plaintiff's assertion that he has a property interest in his New York State Racing and Wagering Board license or that, by revoking Plaintiff's NYRA credential, they, in effect, denied him the benefit of that license. Rather, they simply attempt to circumvent this issue by characterizing this action as a loss-of-employment case, which might tangentially involve a constitutional violation. The problem with this argument is that Defendant NYRA is not Plaintiff's employer.[1] In fact, Plaintiff's claim against Defendants is distinct from the issue of the termination of his employment, an issue that he arbitrated with his employer, Centerplate, and which resulted in the arbitrator "direct[ing] [Centerplate] to reinstate [Plaintiff] and to make him whole for lost wages and tips." *See* Plaintiff's Memorandum of Law at Exhibit "C" at 10. Therefore, the Court finds that, because Plaintiff has a property interest in his New York State Racing and Wagering Board license and because, by revoking his NYRA credential without a hearing, Defendants denied him the benefit of that property interest and, thereby, violated his right to due process, Plaintiff has sufficiently alleged a constitutional violation.

---

[1] The Court notes that all of the cases that Defendants cite to support this proposition involve plaintiffs who are suing their employers and are, therefore, inapposite to the relationship that exists between Plaintiff and Defendants.

Accordingly, the Court presumes that Plaintiff will suffer irreparable harm if the Court does not grant him the injunctive relief that he seeks.[2]

**C. Substantial likelihood of success on the merits**[3]

Plaintiff asserts that there is no doubt that he will prevail on his claim that Defendants violated his due process rights. Specifically, Plaintiff argues that it is beyond dispute (1) that Defendant NYRA is a state actor subject to the Due Process Clauses of the Fifth and Fourteenth Amendments, (2) that a licensee of the New York Racing and Wagering Board is entitled to a hearing before the NYRA can revoke his credential, and (3) that Defendants failed to provide him with the required hearing.

In response, Defendants contend that Plaintiff cannot establish a likelihood of success on the merits of his due process claim because § 1983's "state action" requirement is lacking in this case. *See* Defendants' Memorandum of Law at 9 (citations omitted). To support this proposition, Defendants rely primarily upon *Murphy v. New York Racing Assn., Inc.*, 76 F. Supp. 2d 489

---

[2] The Court notes that, if it were not to adopt this presumption, its conclusion regarding irreparable harm would be to the contrary. Plaintiff's argument that he is unable to obtain other employment because of his lack of experience in the private sector and his age is unpersuasive. Plaintiff, a maitre d'hotel, has failed to demonstrate that there is any difference between the duties of a maitre d'hotel at a racetrack restaurant and the duties of a maitre d'hotel at a private restaurant. Moreover, he does not allege that he is being forced into the streets or that bankruptcy is imminent. Thus, if this case involved a dispute between an employee and his employer concerning the termination of his employment, the Court would be constrained to conclude that Plaintiff had failed to demonstrate the "extraordinary circumstances" necessary for a court to grant preliminary injunctive relief in such circumstances. *See Williams v. State Univ. of N.Y.*, 635 F. Supp. 1243, 1248 (E.D.N.Y. 1986).

[3] Since the injunction that Plaintiff seeks would alter the status quo, it is a mandatory injunction; and Plaintiff must, therefore, demonstrate a substantial likelihood of success on the merits. *See Pinckney*, 920 F. Supp. at 399 (quotation and citation omitted).

(S.D.N.Y. 1999). However, a careful reading of *Murphy* demonstrates that it does not support Defendants' position.

In *Murphy*, the court's discussion of state action was limited to the plaintiff's claims against the individual members of NYRA's Board of Directors in their individual capacities, not against the NYRA itself or against these individuals in their official capacities. In essence, the *Murphy* court held that the plaintiff had not shown that the individual defendants were "state actors," not that the NYRA was not a state actor. In fact, the court allowed the case to proceed against the NYRA. Thus, contrary to Defendants' contention, *Murphy* does not support the proposition that Defendant NYRA is not a state actor for purposes of Plaintiff's due process claims.

Moreover, in *Stevens v. NYRA*, 665 F. Supp. 164 (E.D.N.Y. 1987), the court, after thoroughly analyzing the relationship between NYRA and the State of New York, concluded that NYRA was a state actor. The Court finds the *Stevens* court's reasoning persuasive and, therefore, concludes that Defendant NYRA is a state actor. Having reached this conclusion, the Court must now determine whether Plaintiff has demonstrated that there is a substantial likelihood that he will prevail on his claim that Defendant NYRA violated his due process rights.

In *Galvin*, the court began its analysis of the plaintiff's due process claims by rejecting the NYRA's arguments that the credentials that it issued did not implicate a constitutionally protected property interest and that, because the plaintiff, unlike a trainer or jockey, could practice veterinary medicine in places other than NYRA-operated racetracks, the loss of his credentials did not deny him the ability to ply his trade. *See Galvin*, 70 F. Supp. 2d at 172-73. The court then explained that "the courts of New York have consistently found that the

suspension of NYRA credentials implicates property interests, specifically the interests of holders of New York State Racing and Wagering Board occupational licenses in continuing to enjoy the use of those licenses." *Id.* at 173 (citing 9 NYCRR § 4002.1). Therefore, the court found that, "by suspending [the plaintiff's] NYRA credentials, defendants ha[d] effectively deprived [him] of a protected property interest, the use of his New York Racing and Wagering Board occupational license . . . ." *Id.* (citing *Barry v. Barchi*, 443 U.S. 55, 64 n.11, 99 S. Ct. 2642, 2649 n.11, 61 L. Ed. 2d 365 (1979)). Accordingly, the court held that, because ""state law has engendered a clear expectation of continued enjoyment of a license absent proof of culpable conduct," and has created a property interest in the license[,]' . . . [t]he property interest in these state-issued licenses cannot be infringed by a state body, including the NYRA, without affording due process of law." *Id.* (internal quotation and other citation omitted).

The court further explained that "[t]he essence of due process is that 'a deprivation of life, liberty or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."'" *Galvin*, 70 F. Supp. 2d at 174 (quotation omitted). "This principle requires that there be 'some kind of . . . hearing' prior to the termination of a legally cognizable property interest." *Id.* (citation omitted). Nonetheless, the court noted that "due process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972)).

> The amount of process that is due is dependent on the relative strengths of the interests involved:
>
> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the

> Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail."

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 324, 96 S. Ct. 893, 905, 47 L. Ed. 2d 18 (1976)).

Defendants assert that they provided Plaintiff with an informal hearing, i.e, they told him what the charges were and gave him an opportunity to offer an explanation; when he refused to do so, Defendants asked him to surrender his NYRA credential and escorted him off the property. *See* Affidavit of Kenneth Cook, NYRA's Director of Security, sworn to June 24, 2006, at ¶¶ 15-16.

In this case, to determine the amount of process that is due, the Court must balance the interest of Plaintiff in his New York State Racing and Wagering Board license, which affords him the opportunity to work at NYRA-operated racetracks, against Defendant NYRA's interest in ensuring the honest operations of its facilities. In performing this balancing test, the Court concludes that Defendants' description of the "informal hearing" that they provided to Plaintiff, without more, does not provide a sufficient factual basis to support a conclusion that this informal procedure comported with the requirements of due process.[4] Accordingly, based upon the record before it, the Court concludes that Plaintiff has shown a substantial likelihood that he will succeed on the merits of his due process claim against Defendant NYRA.[5]

---

[4] The Court does not intend to indicate that Defendant NYRA must provide Plaintiff with a formal, quasi-judicial hearing before revoking his NYRA credential. However, in order to comport with due process, Defendant NYRA, at the very least, must provide Plaintiff with sufficient time to gather evidence to support his defense to the charges and must provide Plaintiff with an opportunity to present that evidence, to question his accusers, and to be represented by counsel at such a proceeding.

[5] Since the Court has determined that Plaintiff is entitled to a preliminary injunction with (continued...)

## III. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for a preliminary injunction against Defendant NYRA is **GRANTED**; and the Court further

**ORDERS** that Defendant NYRA is to return Plaintiff's NYRA credential to him; and the Court further

**ORDERS** that Defendant NYRA is enjoined, pending the resolution of this action, from barring Plaintiff from working as a maitre d'hotel at his place of employment at Saratoga Race Course; and the Court further

**ORDERS** that this preliminary injunction will become effective upon Plaintiff's posting of a security bond in the amount of **$5,000** with the Clerk of the Court pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: July 18, 2006
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[5](...continued)
respect to his due process claim against Defendant NYRA based upon its revocation of his NYRA credential without a hearing, there is no need, at this stage of the litigation, for the Court to address Plaintiff's other claims.