**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MANUEL S. ALVAREZ,**

                                        **Plaintiff,**

            **v.**                                          **1:06-CV-745**
                                                            **(FJS/DRH)**

**CHARLES HAYWOOD, WILLIAM**
**NADER, and THE NEW YORK STATE**
**RACING ASSOCIATION, INC.,**

                                        **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**COOPER ERVING & SAVAGE LLP**           **PHILLIP G. STECK, ESQ.**
39 North Pearl Street
4th Floor
Albany, New York 12207
Attorneys for Plaintiff

**BOND, SCHOENECK & KING PLLC**          **EDWARD P. HOURIHAN, JR., ESQ.**
350 Linden Oaks - Suite 310             **BRIAN LAUDADIO, ESQ.**
Fairport, New York 14625                **JOSEPH S. NACCA, ESQ.**
Attorneys for Defendants


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION & ORDER**

**I. INTRODUCTION**

Currently before the Court is Plaintiff's motion for summary judgment for damages in the amount of $34,457.87, plus interest and an award of attorney's fees and expenses incurred in this case. Defendants submitted a response affidavit and a response memorandum of law in opposition to Plaintiff's motion on January 10, 2011. Plaintiff filed a reply to Defendants' response on January 18, 2011.

**II. BACKGROUND**

This motion arises from Plaintiff's 42 U.S.C. § 1983 action to redress alleged violations of his civil rights that occurred during the process by which Defendant New York Racing Authority ("NYRA") suspended his credentials.

Before and during the 2005 horse racing season, Plaintiff worked as a maitre d'hotel for the restaurant and concessions group Centerplate. On or about August 21, 2005, Centerplate terminated Plaintiff's employment and Defendant NYRA revoked Plaintiff's credentials for allegedly selling premium tables at a Saratoga Race Course restaurant. *See* Complaint at ¶ 15. Defendant NYRA employed the investigators and the Director of Security who gathered the evidence in support of the table-selling allegation. *See id. at* ¶ 16. Shortly thereafter, Defendant Nader announced that Plaintiff would never work again in a New York racetrack. *See id.* at ¶ 17.

On January 5, 2006, an arbitrator issued a decision in which he concluded that the evidence did not support the table-selling allegation. *See* Complaint at ¶ 18. The arbitrator further determined that Plaintiff should be reinstated to his employment and made whole with respect to his lost wages and tips. *See id.* Plaintiff requested to return to his former maitre d'hotel positions at

-2-

Belmont Park and Saratoga; but, although Centerplate had reinstated Plaintiff, Defendant NYRA refused to reissue him credentials. *See id.* at ¶ 19. As a consequence, Plaintiff could not enter NYRA-controlled property and, therefore, could not work at the Belmont and Saratoga racecourses. *See id.*; Pltf. Affidavit of October 8, 2010. Although the arbitrator awarded Plaintiff back pay from Centerplate for the work he missed in 2005, Plaintiff's lack of NYRA credentials caused him to miss significant work in 2006. *See* Pltf. Affidavit of October 8, 2010.

On June 14, 2006, Plaintiff commenced the instant action under 42 U.S.C. § 1983, in which he alleged that Defendant NYRA's seizure and withholding of his credentials without a hearing violated his right to due process under the Fifth and Fourteenth Amendments. *See* Complaint. In Count I, Plaintiff requested his reinstatement pending the outcome of a hearing. *See id.* at ¶¶ 21-30. In Count II, Plaintiff alleged that, in light of the arbitration proceeding, Defendant NYRA was collaterally estopped from making any findings inconsistent with the result of the arbitration. *See id.* at ¶¶ 31-36.

On July 18, 2006, the Court issued a Memorandum-Decision & Order in which it held that Defendant NYRA was required to hold a hearing prior to revoking Plaintiff's credentials. *See* Dkt. No. 20, Memorandum-Decision & Order, at 9. The Court further ordered Defendant NYRA to return Plaintiff's credentials to him and enjoined Defendant NYRA from barring Plaintiff from working as a maitre d'hotel at Saratoga Race Course. *See id.* The Court reasoned that Plaintiff had suffered irreparable harm because, "'[g]iven NYRA's "virtual monopoly power over thoroughbred racing in the State of New York," its decision to exclude a licensee from its tracks "is tantamount to barring [the licensee[]] from the only places in the State where he may ply his trade . . . "'" *See id.* at 4 (citing *Jacobson v. New York Racing Ass'n, Inc.*, 33 N.Y.2d 144, 149-150 (1973)). The Court

reasoned that Plaintiff had a property interest in his New York State Racing and Wagering Board License and that, because Defendants denied Plaintiff the benefits of that property interest and violated his right to due process, Plaintiff sufficiently alleged a constitutional violation. *See id*. at 4. The Court further concluded that Plaintiff demonstrated a substantial likelihood that he would succeed on the merits of his due process claim against Defendant NYRA. *See id*. at 8.

On October 20, 2006, a hearing occurred before Cohoes City Court Judge Hon. Richard R. Maguire. *See* Pltf. memo of law dated October 22, 2010, at 3. Defendant NYRA appointed Judge Maguire as hearing officer; he was not acting in his official capacity. *See id*. Judge Maguire never issued a decision in this matter, and Plaintiff continued to work for Centerplate at NYRA-controlled properties until his retirement in 2010. *See id.*

The Court has already ruled that Defendants violated Plaintiff's constitutional rights when they denied him a hearing before terminating him and depriving him of his credentials. Therefore, the Court need only address the issue of damages at this time, in addition to the issue of whether Defendants Haywood and Nader are entitled to qualified immunity.

In the instant motion, Plaintiff seeks damages for the economic losses he sustained in 2006 during the period between the revocation of his credentials and his reinstatement pursuant to the Court's Order. *See* Pltf. memo of law dated October 22, 2010, at 3. Plaintiff asserts that he lost $7,888.75 in wages, $12,946 in unemployment benefits, and $13,623.12 in pension benefits. *See id*. at 3-4. Plaintiff further contends that the $5,000 he spent on posting a bond to secure his return to work under the preliminary injunction should be returned to him and that, pursuant to 42 U.S.C. § 1988, he should receive payment for the attorney's fees and expenses that he incurred as a result of this action. *See id*. at 4. Plaintiff's attorney submitted affidavits regarding these fees and

-4-

expenses.  *See* Dkt. No. 34, Exhibit "7" attached thereto.

# III. DISCUSSION

## A.     Legal Standard

Courts will only grant summary judgment where, with all reasonable inferences drawn in favor of the non-moving party, the moving party can show that no genuine issue of material fact exists.  *See Beard v. Banks*, 548 U.S. 521, 529-30 (2006).

## B.     Summary judgment against the individual defendants[1]

### 1. Personal involvement

The "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'"  *Johnson v. Wright*, 234 F. Supp. 2d 352, 362-63 (S.D.N.Y. 2002) (quotation omitted).  To sufficiently allege personal involvement on the part of an individual defendant, a plaintiff must demonstrate that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation . . . failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the alleged victim] by failing to act on information indicating that unconstitutional acts were occurring.

---

[1] It is well-settled that the Eleventh Amendment prevents plaintiffs from seeking monetary damages from states or their agencies; as a result, Plaintiff is unable to obtain monetary relief from the New York Racing Association.  *See Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 (1945).  The Eleventh Amendment does not, however, prevent plaintiffs from seeking reimbursement for attorney's fees from states or their agencies.  *See Hutto v. Finney*, 437 U.S. 678 (1978).

*JG & PG v. Card*, No. 08 Civ. 5668, 2009 WL 2986640, *7 (S.D.N.Y. Sept. 17, 2009) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Where an individual defendant makes a recommendation in favor of an action to deprive a plaintiff of a constitutional interest without due process, that defendant has directly participated in the alleged violation.  *See McLaughlin v. Pezzolla*, No. 06-CV-0376, 2010 WL 56051, *17 (N.D.N.Y. Jan. 4, 2010).   Where an individual defendant acting in a supervisory capacity has knowledge or should have had knowledge of the violation, he may be held personally liable under § 1983.  *See Universal Calvary Church v. City of N.Y.*, No. 96 CIV. 4606, 2000 WL 1538019, *44 (S.D.N.Y. Oct. 17, 2000) (citing *Blyden v. Mancusi*, 186 F.3d 252, 264-65 (2d Cir. 1999)).

Here, the evidence clearly establishes that Defendants Hayward and Nader were personally involved in Plaintiff's constitutional violation.  Plaintiff submitted evidence that Defendant Hayward participated in Plaintiff's denial of due process when he refused to return Plaintiff's credentials and directed Defendant NYRA's counsel to deny Plaintiff a hearing.  In addition, Plaintiff produced evidence that Defendant Nader knew of Plaintiff's civil rights violation and did not prevent it when he remarked to the media that Plaintiff would never again work at an NYRA facility.

### 2. Qualified immunity

Qualified immunity involves a three-step inquiry.  First, courts determine whether the plaintiff suffered the violation of a constitutional right.  *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003).  Next, the court must ask whether the violated right was one that was clearly established at the time of the violation.  *See id.* (citation omitted).  Finally, the

court determines whether the defendants' actions were objectively reasonable.  *See id.* (citation omitted).  Regarding the first step, courts should determine whether the plaintiff had a constitutional interest at stake and, if so, whether he received due process before being deprived of that constitutional interest.  *See id.* at 212 (citation and footnote omitted).  Regarding the second step, "[a] right is 'clearly established' if '[t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)).

In this case, Plaintiff had a constitutional interest at stake, specifically, a property interest in his position.  Moreover, Defendants deprived Plaintiff of this interest without due process because Defendants revoked his credentials without either notice and an opportunity to be heard or a full adversarial hearing.  *See Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) (holding that where an employee has a property interest in his employment, he cannot be terminated without either a formal hearing or notice and opportunity to be heard prior to termination, followed by a hearing (quotation and other citation omitted)).  Next, Plaintiff's constitutional right was clearly established.  *See Belanger v. Blum*, No. 3:08-cv-584, 2010 WL 1286857, *5 (D. Conn. Mar. 30, 2010) (holding that, where a plaintiff has a clearly established property interest in his job, his constitutional right is also clearly established) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 350 (7th Cir. 1998)).  Finally, courts typically find that it is objectively unreasonable where, as here, a government official terminates an employee's position without a pre-termination hearing.  *See Clark v. Mercado*, No. 96-CV-0052E, 1998 WL 328637, *6 (W.D.N.Y. June 8, 1998).  Accordingly, the Court finds that Defendants Hayward and Nader have not met their burden to prove that they are

entitled to qualified immunity.

### 3. Causation and mitigation of damages

The Second Circuit has held that "[a] § 1983 action, like its state tort analogs, employs the principle of proximate causation." *Townes v. City of N.Y.*, 176 F.3d 138, 146 (2d Cir. 1999) (citation omitted). To determine causation, courts examine the acts of the defendants that caused the alleged constitutional violation and then inquire as to the existence of a possible superseding cause of the alleged constitutional violation.[2] *See id.* at 147.

Regarding mitigation of damages, "[a] discharged employee must 'use reasonable diligence in finding other suitable employment,' which need not be comparable to [his] previous position[]." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231-32 & n.15, 102 S. Ct. 3057, 3065-66 & n.15, 73 L. Ed. 2d 721 (1982)). However, the employer generally bears the burden of proving that suitable work existed and that the former employee did not make a reasonable effort to find it. *See Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997) (citations omitted). Courts have held that the duty to mitigate damages applies to plaintiffs in § 1983 actions. *See Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994) (citation omitted).

Defendants argue that Plaintiff failed to present evidence that Defendant NYRA's revocation of his credentials caused his damages. *See* Deft. response at 5. Defendants reason that, during the

---

[2] For this inquiry, the Second Circuit defines superseding cause as "'an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" *Townes*, 176 F.3d at 147 (quoting *Restatement (Second) of Torts* § 440 (1965)).

time period for which Plaintiff seeks damages, he remained employed by Centerplate, even though he did not have his NYRA credentials. *See id.* As a consequence, Defendants aver that Plaintiff was able to work for Centerplate at one of its other venues, which included several venues that Defendant NYRA did not control. *See id.* at 6-7. Defendants use the same reasoning to contend that Plaintiff did not attempt to find other work to mitigate his damages, as plaintiffs in lost wages and employment cases must do. *See id.* at 8.

Here, the Court has already recognized that Defendant NYRA's revocation of Plaintiff's credentials without a hearing made it impossible for Plaintiff to practice his trade. *See* Dkt. No. 20, Memorandum, Decision and Order of July 18, 2006. Defendants have presented no evidence of a superseding cause, and there can therefore be little doubt that Defendants' actions were the proximate cause of Plaintiff's constitutional violation.

As to Plaintiff's mitigation of damages, Defendants have not presented any evidence that substantially equivalent positions were open and available to Plaintiff, only that Plaintiff's employer, Centerplate, operated facilities at sporting venues throughout New York State. *See* Deft. response at 8. Defendants' argument ignores their burden and expects Plaintiff to set forth evidence of his mitigation. *See id.* Therefore, the Court finds that Defendants' actions were the proximate cause of Plaintiff's constitutional violation and that Defendants have not met their burden to establish Plaintiffs' failure to mitigate his damages.

Accordingly, for all these reasons, the Court grants Plaintiff's motion for summary judgment as to damages against Defendants Haywood and Nader, jointly and severally, in the amount of $34,457.87 plus interest.

**C.    Attorney's fees**

*1. Method of calculation and reasonableness of fee*

When calculating an award of attorney's fees "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Courts refer to this initial calculation method as the "lodestar" method.  *See Streck v. Bd. of Educ. of E. Greenbush Cent. Sch. Dist.*, 408 Fed. Appx. 411, 415-16 (2d Cir. 2010) (quotation omitted).  However, district courts "should exclude from this initial fee calculation hours that were not 'reasonably expended.'"  *Hensley*, 461 U.S. at 434 (quotation omitted).

Plaintiff seeks payment for 425.70 hours of legal work, for a total of $79,173.50.  *See* Dkt. No. 34, Exhibit "3" attached thereto, Affidavit of Phillip G. Steck ("Steck Aff.").  Plaintiff retained the office of Cooper Erving & Savage LLP as counsel.  *See id.*  Partners working on this case requested between $175 and $275 per hour.  Senior counsel requested between $175 and $245 per hour, and of counsel attorneys charged $250 per hour.  *See id.*  Associates working on this case requested between $120 and $200 per hour.  Paralegals requested $60 per hour.  *See id.*

| Name | Date(s) | No. of Hours | Requested Rate | Total Requested |
|---|---|---|---|---|
| Phillip G. Steck (Partner) | 4/26/06–6/28/06 | 44.9 | $210 | $9,429.00 |
| | 7/6/06–11/29/06 | 64.9 | $225 | $14,602.50 |

| | 1/22/07–12/3/07 | 10.3 | $225*[3] | $2,317.50 |
|---|---|---|---|---|
| | 10/27/08–present | 16.1 | $275 | $4,427.50 |
| Terrance P. Christenson (Partner) | 4/26/06–4/27/06 | 1.7 | $175 | $297.50 |
| | 7/19/06–8/23/06 | 1.7 | $210* | $357.00 |
| Craig H. Norman (Partner) | 6/29/08–6/30/08 | 1.7 | $210* | $357.00 |
| Henry C. Collins (Of Counsel) | 4/5/07–6/13/07 | 6 | $210* | $1,260.00 |
| Richard R. Rowley (Senior Counsel) | 8/2005–5/1/06 | 25 | $175 | $4,375.00 |
| | 7/25/06–8/30/06 | 2 | $210* | $420.00 |
| Amanda A. Avery (Associate) | 6/7/06–11/20/06 | 174.5 | $120* | $20,940.00 |
| | 1/2/07–10/24/07 | 42 | $150* | $6,300.00 |
| Brian W. Matula (Associate) | 4/3/06–4/24/06 | 13.9 | $120* | $1,668.00 |
| | 6/30/08–10/27/08 | 3.3 | $150* | $495.00 |
| Jennifer C. Zegarelli (Associate) | 10/12/10–10/21/10 | 12.4 | $150* | $1,860.00 |
| David C. Rowley (Partner) | 9/1/05 | 1 | $175 | $175 |
| | 8/21/06–8/22/06 | 4.1 | $210* | $861.00 |
| Sarah L. Boncke (Paralegal) | 8/23/06 | .2 | $60 | $12 |
| **TOTAL** | | 425.70 | | $70,154.00 |

---

[3] Entries with an asterisk indicate that the attorney requested less than his or her customary hourly rate for the work performed during the given time period.

Courts have found that an hourly rate between $285 and $300 is reasonable for a partner with twenty years of experience. *See Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, --- F. Supp. 2d ----, 2011 WL 1898909, *17-*18 (W.D.N.Y. 2011). Courts have also held that an hourly rate between $185 and $195 is appropriate for an experienced associate, and $120 per hour is an appropriate amount to charge for the services of a paralegal with twenty years of experience. *See id*. All of the rates that Plaintiff's counsel charged fall within this spectrum; and, accordingly, the Court finds that Plaintiff's counsel's hourly fees are reasonable.[4]

### 2. Areas of contention

Defendants cite several instances of attorney billing for which they argue Plaintiff should not receive compensation. Defendants do not dispute the reasonableness of Plantiff's attorney's rates, but they contend that Plaintiff's attorneys submitted bills for work that was not sufficiently related to this matter. Defendants filed an affidavit in opposition to Plaintiff's motion for summary judgment in which they assailed several of Plaintiff's counsel's billing entries as not compensable. *See* Dkt. No. 40, Nacca Affidavit. This affidavit makes blanket assertions regarding the billing entries at issue and does not raise any issues of material fact. However, Defendants' response memorandum and Plaintiff's reply discuss this issue more substantively and discuss each area of disputed billing in greater detail.

---

[4] Notably, Defendants do not challenge the reasonableness of Plaintiff's counsel's hourly rates, only the number of hours billed.

### a. 42 U.S.C. § 1988

Pursuant to 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).

### b. Limited success

It is well-settled that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.  However, it remains within the discretion of the "district court to determine what fee is 'reasonable.'"  *Id*. at 433.  Where a "plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" and, here, the "most critical factor is the degree of success obtained." *Id*. at 436.  Consequently, "[a] downward adjustment may . . . be appropriate . . . when a plaintiff 'succeed[s] on only some of his claims for relief.'"  *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724, 2010 WL 451045, *3 (S.D.N.Y. Feb. 9, 2010) (quotation omitted).

However, although a court may adjust a presumptively reasonable fee request, "there remains throughout the fee determination process, '[a] strong presumption that [this initial calculation] . . . represents a "reasonable" fee.'"  *Id.* at *4 (quotation and other citations omitted).  A plaintiff may receive compensation for work that counsel performed on ultimately unsuccessful claims, but those claims must have been related to the plaintiff's successful claims.  *See id*. at *3 (quotation omitted).  Therefore, courts typically apply the concept of limited success to situations in which a plaintiff makes multiple claims, some of which succeed and some of which do not.  *See*

*generally M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d 425 (D. Conn. 2008) (reducing fees awarded for lack of success on some of the plaintiff's claims); *Diaz v. Paragon Motors of Woodside, Inc.*, No. CV-03-6466, 2007 WL 2903920 (E.D.N.Y. Oct. 1, 2007) (not reducing the plaintiff's award for partial success for the claim on which he prevailed).[5]

Defendants contend that Plaintiff is not entitled to the full amount he seeks because of his allegedly limited success, reasoning that Plaintiff did not achieve complete success because, although Plaintiff has shown damages in the amount of $34,457.87, his complaint sought damages in the amount of $1,600,000.[6]  *See id.* at 10.

Unlike the typical instances where the limited success of a plaintiff's case results in lower reimbursements, here, Plaintiff prevailed on all of his individual claims.  In addition, the relevant caselaw indicates that courts consider limited success to occur where some of the plaintiff's claims fail, not where the plaintiff cannot prove all of the damages that he requests.  Defendants' argument is therefore inapposite where they assert that, because Plaintiff has not proved he is entitled to $1,600,000, he has met with limited success.  Accordingly, the Court finds that Plaintiff has achieved complete success and denies Defendants' request to reduce Plaintiff's request for attorney's fees to the extent that Defendants rely on the ground of limited success.

---

[5] Courts have found that a plaintiff's inability to recover a substantial portion of the damages he sought merited a finding of limited success for the purposes of reimbursement for legal fees; however, such a finding typically occurs where, unlike here, the plaintiff only obtained nominal damages.  *See Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992).

[6] Plaintiff's complaint sought attorney's fees, as well as $600,000 for back pay and all non-economic damages associated with his loss of employment and $1,000,000 in punitive damages.

### c. Representation at the October 20, 2006 credential hearing

The Supreme Court has held that prevailing parties are entitled to reimbursement for attorney's fees for the time their counsel expended in connection with state administrative proceedings that are related to the underlying federal litigation. *See N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61-62 (1980) (holding that time spent preparing for a hearing before the Equal Employment Opportunity Commission was compensable in an action brought under Title VII of the Civil Rights Act). The Second Circuit has clarified that a victorious party is entitled to compensation for the legal costs associated with administrative proceedings that a court orders. *See Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 122 (2d Cir. 2002) (holding that, in a lawsuit brought under ERISA, "[t]he fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the 'action'" for the purposes of attorney compensation). In addition, the Seventh Circuit has used the reasoning set forth in the *N.Y. Gaslight* decision to award attorney's fees for representation at administrative proceedings where a party sought reimbursement pursuant to 42 U.S.C. § 1988. *See Ciechon v. City of Chicago*, 686 F.2d 511, 524-25 (7th Cir. 1982).

Regarding the potential for excessive fees, the Second Circuit has found that 302 hours spent preparing for a one-day trial is grossly excessive, particularly where that trial involved one substantive issue and the testimony of four witnesses. *See DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985). Courts have found as little as forty-four hours to be excessive in preparation for a one-day trial. *See Sidley Holding Corp. v. Ruderman*, No. 08 Civ. 2513, 2009 WL 6047187, *20 (S.D.N.Y. Dec. 30, 2009). Courts have reduced billed hours by a percentage "to ensure that the award includes only those hours reasonably expended." *Pastre v. Weber*, 800 F. Supp. 1120, 1126

(S.D.N.Y. 1991) (reducing an award by twenty-five percent where, despite the complexity of the case and length of the motions involved, a plaintiff's attorney submitted a bill for 402 hours for responding to a summary judgment motion, preparing for and conducting a two-day trial, and preparing the post-trial memorandum and brief on appeal) (citing [*N.Y.S. Ass'n for Retarded Children, Inc. v.*] *Carey*, 711 F.2d [1136,] 1146 [(2d Cir. 1983)] (approving percentage cuts as a practical means of "trimming fat" from a fee application)).  Percentage cuts may appear in cases where attorneys spend their time inefficiently.  *See Simmonds v. N.Y.C. Dep't of Corr.*, No. 06 Civ. 5298, 2008 WL 4303474, *7-*8 (S.D.N.Y. Sept. 16, 2008) (reducing the number of compensable hours by forty percent where a co-counsel arrangement resulted in inefficiencies such as 182 hours spent preparing a complaint); *DCH Auto Group (USA), Inc. v. Fit You Best Auto., Inc.*, No. CV-05-2973, 2006 WL 279055, *8 (E.D.N.Y. Jan. 10, 2006) (reducing the award by thirty-five percent where the plaintiff requested reimbursement for attorney's fees not appropriately billed to a client, for time that attorneys spent performing tasks better suited to paralegals and for time spent engaged in work that did not advance the case); *LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (reducing the number of compensable hours by fifty percent where the number of hours for which the plaintiffs requested compensation was objectively excessive for a straightforward ERISA appeal)

Defendants contend that the credential hearing was not part of the § 1983 litigation; and, therefore, Plaintiff should not receive attorney's fees.  *See* Deft. response at 12.  In the alternative, Defendants argue that, even if the Court finds that Plaintiff's counsel's representation at the credential hearing is compensable, the hours claimed are excessive.  *See id*. at 17.

The NYRA credential hearing occurred well after the Court obtained jurisdiction over this

-16-

case.  Moreover, the hearing occurred pursuant to the Court's Memorandum-Decision and Order of July 18, 2006.  Under the governing caselaw, the credential hearing is a related proceeding.  Accordingly, the Court finds that Plaintiff's counsel's time spent preparing for the hearing is compensable.

Regarding Plaintiff's counsel's allegedly excessive amount of hours billed, Defendants' calculation that Plaintiff's counsel spent 230.7 hours preparing for the hearing is incorrect.  As the following chart and footnote nine explain, Plaintiff's counsel more accurately expended 223.9 hours, which is still a substantial sum.  Amanda Avery, an associate, billed the majority of this time; and she primarily conducted research, wrote memos, and spoke with Plaintiff.  However, Ms. Avery had performed less than one hour of work on this case prior to August 2010.  As a consequence, her unfamiliarity with the case may have caused inefficiencies in research.  In addition, 223.9 hours are objectively excessive for preparation of a one-day hearing on relatively uncomplicated matters.  Accordingly, the Court grants Plaintiff's request for attorney's fees associated with Plaintiff's NYRA hearing but reduces the fees for which he will be compensated by fifty percent, according to the following table:

| Attorney | Hours spent on hearing | Fees requested[7] | 50% of fees requested |
|---|---|---|---|

---

[7] These amounts differ from Defendants' calculation.  When calculating the fees associated with the NYRA hearing for which Defendants thought Plaintiff should not be compensated, Defendants used Plaintiff's counsel's actual billing rates and not the rates at which Plaintiff requested reimbursement.

| Phil Steck | 22.6 | $5,085.00 | $2,542.50 |
| Terrance Christenson | 1.2 | $252.00 | $126.00 |
| Richard Rowley | .4 | $84.00 | $42.00 |
| Amanda Avery[8] | 195.4 | $24,549.00 | $12,274.50 |
| David Rowley | 4.1 | $861.00 | $430.50 |
| Sarah Boncke | .2 | $12.00 | $6.00 |
| **Total** | 223.9 | $30,843.00 | $15,421.50 |

### d. Pre-litigation matters

The Supreme Court has held that "some of the services performed before a lawsuit is formally commenced are performed 'on the litigation.'" *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985). As examples of such services, the Court specifically mentioned "the drafting of the initial pleadings and . . . the development of the theory of the case." *Id.* (footnote omitted). However, *Webb* is distinguishable from the instant case in that the pre-litigation work for which the plaintiff sought compensation in that case was for an administrative hearing that occurred five years before the civil rights litigation. Here, Defendants specifically challenge two charges: $472.50 for time spent drafting memoranda regarding whether Plaintiff's counsel's firm should take Plaintiff's case, and $3,902.50 for Plaintiff's counsel's assistance during Plaintiff's labor arbitration.

---

[8] The Court has subtracted 6.8 hours from Defendants' calculation. *See* Nacca Aff. at 2. Defendants' calculation includes entries for October 23, 2006, and October 30, 2006, in which Ms. Avery worked exclusively on an unfiled motion for attorney's fees. Defendants also dispute these entries because the motion went unfiled, and Defendants should only be able to dispute items once. This accounts for 3.7 hours of the differential. Defendants also dispute 20.5 hours of block-billed entries where Ms. Avery worked on the unfiled motion, as well as the hearing. To prevent Defendants from twice disputing work expended on the hearing, the Court has reduced the block-billed hours by fifteen percent to represent the time Ms. Avery spent on the unfiled motion.

The Court finds that the first charge falls under the category of developing a theory of the case and the second one involves advising Plaintiff regarding a related administrative proceeding, an action that advanced Plaintiff's § 1983 claim. Accordingly, the Court grants Plaintiff's request for attorney's fees for the time his counsel spent on these tasks.

### e. Bankruptcy

Where a defendant who is subject to a § 1988 fee-shifting arrangement files for bankruptcy and the plaintiff's attorney represents the plaintiff's interest in his civil rights claim during the defendant's bankruptcy proceedings, the plaintiff should receive attorney's fees for his counsel's work related to the bankruptcy proceeding. *See Pinshaw v. Monk*, 565 F. Supp. 44, 46-47 (D. Mass. 1983) (holding that the plaintiff was entitled to attorney's fees where defendant filed for bankruptcy and listed the plaintiff's cause of action as one of his debts).

Defendants challenge the reimbursement of these fees, claiming that Plaintiff's counsel's representation in connection with the bankruptcy proceeding did not advance the instant litigation. *See* Deft. response at 18.

Although not much caselaw exists that addresses this exact situation, the Court concludes that Plaintiff should receive attorney's fees for the work his counsel expended representing his interests at related bankruptcy hearings. Since a civil rights plaintiff in this situation is a potential creditor of a bankrupt defendant, the plaintiff's counsel must become involved with the defendant's bankruptcy proceeding to maintain his client's underlying civil rights claim. Accordingly, the Court finds that Plaintiff should be awarded attorney's fees for the time his counsel expended representing him during Defendant NYRA's bankruptcy.

### *f. Time spent with media*

The Second Circuit has held that time spent representing a client in the media is compensable.  *See generally Martin v. Merola*, 532 F.2d 191 (2d Cir. 1976); *see also U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 482 (S.D.N.Y. 1989) (stating that, where the nature of a lawsuit necessitates a certain amount of interaction with the media and where time spent with the media is not extensive relative to time spent on substantive legal work, "the comparatively few hours spent on required media relations are fully compensible" (citation omitted)).  Media time is especially compensable where the party seeking compensation interacted with the media in response to another party's press statements.  *See Westchester Legal Servs., Inc. v. Cnty. of Westchester*, No. 85 Civ. 3115, 1987 WL 6160, *4 (S.D.N.Y. Jan. 27, 1987) (distinguishing between instances in which a party's counsel initiates media relations and instances where counsel engages in media relations to respond to its opponent's assertions and favoring compensation for the latter).

In the instant matter, Defendants claim that the time that Plaintiff's counsel spent addressing the media did not advance the instant litigation; and, as a result, it is not compensable.  *See* Deft. response at 20-21.  However, Defendants appear to have initiated the media contact, which necessitated a response from Plaintiff's counsel.  *See* Dkt. 3, Exhibit "2" attached thereto, Affidavit of Pltf., at ¶ 19 (asserting that Defendant NYRA disseminated the story of Plaintiff's termination to counteract the negative publicity regarding its fiscal mismanagement at the time and also stating that Defendant Nader made comments to the television media to the effect that Plaintiff would never again work at a New York racetrack).  According to Defendants' calculations, Plaintiff's counsel spent 5.4 hours responding to media inquiries.  *See* Nacca Affidavit, Dkt. No. 34, Exhibit

"1" attached thereto, at 3.  Relative to the number of hours Plaintiff's counsel expended on this case, 5.4 hours on media relations is small, and it fits within the ratio of media hours to legal work hours described in *U.S. Football League*.  More importantly, the fact that Plaintiff did not initiate a media campaign and instead used the media to respond to Defendants' statements is indicative of compensable time.  Accordingly, the Court finds that Plaintiff should receive attorney's fees for the time his counsel expended addressing the media on Plaintiff's behalf.

### g. Time spent preparing instant fee application

The Second Circuit has held that prevailing parties are entitled to compensation for the work that their counsel expended preparing fee applications, as long as the hours claimed are not excessive.  *See Gagne v. Maher*, 594 F.2d 336, 343-44 (2d Cir. 1979).  As a benchmark for what constitutes excessive hours spent on a fee application, "[t]he Second Circuit has upheld fee awards where the time spent on the fee application was up to 24% of the total time claimed."  *Davis v. City of New Rochelle, N.Y.*, 156 F.R.D. 549, 561 (S.D.N.Y. 1994) (citation omitted).

Here, Plaintiff's claimed hours are not excessive.  *See Gagne*, 594 F.2d at 344 (declining to rule on whether fifty-eight hours spent on a fee application is excessive and holding that this decision is within the district court's discretion); *Colbert v. Furumoto Realty, Inc.*, 144 F. Supp. 2d 251, 262 (S.D.N.Y. 2001) (reducing the number of compensable hours on a fee application from twenty and one-half to fifteen and one-half);  *Natural Res. Def. Council v. Fox*, 129 F. Supp. 2d 666, 675 (S.D.N.Y. 2001) (permitting reimbursement of 124.65 hours, or fourteen and one-half percent of total hours billed, expended on a fee application).  Plaintiff's counsel expended 12.4 hours on the fee application, which represents just under three percent of the overall total of 425.7

hours for which Plaintiff seeks attorney's fees.  Accordingly, the Court grants Plaintiff's request for attorney's fees for his counsel's 12.4 hours[9] of work on this application.

### h. Online research costs

The Second Circuit has held that the fees associated with online research are compensable, reasoning that "the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar[;]" and, as a result, if counsel typically charges its clients for the cost of electronic research services, this expense is compensable.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).

Here, Plaintiff's counsel stated that it is the firm's practice to charge its clients for the online research fees that the firm incurs on each client's behalf.  *See* Pltf. reply at 10.  Moreover, given the expense of maintaining and using a LexisNexis account, Plaintiff's counsel's practice of charging a proportion of its flat monthly rate for an overall charge of $219.28 is astonishingly reasonable. Accordingly, the Court finds that Plaintiff's attorney's fees award should include the costs of conducting online legal research.

### i. Unfiled motion

Where a party's counsel expends time on motions that are not filed, courts have deemed such

---

[9] In his calculation of the hours his counsel expended on the instant fee application, Plaintiff requested 24.4 hours, which, upon review of Plaintiff's counsel's billing records, represents 12.4 hours spent on the instant fee application and an additional twelve hours spent on a fee application that was never filed.  *See* Dkt. No. 34, Exhibit "7," Pltf. counsel billing records, at 37-38, 44.  Defendant and the Court treat these fee applications separately, and a separate discussion of the unfiled fee application appears *infra*.

time compensable where, even though the motion was not filed, it was prepared in order to advance the underlying litigation. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 336 F. Supp. 2d 370, 392 (D.N.J. 2004), *aff'd in part, vacated in part*, 426 F.3d 694 (3d Cir. 2005). Regarding block billing, courts have repeatedly reduced attorney's fees awards to reflect the difficulty of differentiating between compensable and non-compensable charges. *See, e.g., Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (reducing requested attorney's fees by twelve percent where counsel worded its entries vaguely); *Local 32B-32J, SEIU v. Port Auth. of N.Y & N.J.*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (reducing requested fees by twenty percent to reflect vague descriptions in counsels' time entries); *Wilder v. Bernstein*, 975 F. Supp. 276, 285 (S.D.N.Y. 1997) (reducing fees by ten percent to account for vague time entries (quotation omitted)).

Reasoning that the unfiled motion did not advance this litigation, Defendants challenge the compensability of the hours Plaintiff's counsel spent working on it. *See* Deft. response at 20. In this instance, there is no evidence, either in the record or in Plaintiff's submissions, to support the proposition that Plaintiff's unfiled motion for attorney's fees advanced the instant litigation. Accordingly, the Court finds that these charges are not compensable and reduces Plaintiff's request.

First, Plaintiff's counsel's affidavit contains entries for 11.5 hours that Associate Amanda Avery spent working on this motion exclusively, at a rate of $120 per hour. The Court therefore reduces Plaintiff's award by $1,380. Moreover, since Plaintiff should not be reimbursed for the time his counsel expended on the unfiled motion, he should likewise not receive full compensation for his counsel's block billing entry. Plaintiff's counsel's affidavit contains block-billed entries for twenty-one hours that Associate Amanda Avery spent, at a rate of $120 per hour, for a total of $2,520. Accordingly, the Court reduces the block billing entry by fifteen percent, or $378, for a

total reduction of $1,750.00.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment as to damages against Defendants Hayward and Nader, jointly and severally, is **GRANTED** in the amount of **$34,457.87**, plus interest; and the Court further

**ORDERS** that Plaintiff's request for attorney's fees is **GRANTED** in the amount of **$52,974.50**, against all three Defendants jointly and severally, calculated as follows:

| Attorney | Hours Requested | Fees Requested | Fees Subtracted | Total Awarded |
|---|---|---|---|---|
| Phil Steck | 136.2 | $30,776.50 | $2,542.50 | $28,234.00 |
| Terrance Christenson | 3.4 | $654.50 | $126.00 | $528.50 |
| Craig Norman | 1.7 | $357.00 | 0 | $357.00 |
| Henry Collins | 6 | $1,260.00 | 0 | $1,260.00 |
| Richard Rowley | 27 | $4,795.00 | $42.00 | $4,753.00 |
| Amanda Avery | 216.5 | $27,240.00 | $14,032.50 | $13,207.50 |
| Brian Matula | 17.20 | $2,163.00 | 0 | $2,163.00 |
| Jennifer Zegarelli | 12.4 | $1,860.00 | 0 | $1,860.00 |
| David Rowley | 5.1 | $1,036.00 | $430.50 | $605.50 |
| Sarah Boncke | .2 | $12.00 | $6.00 | $6.00 |

| | | | **GRAND TOTAL ATTY FEE AWARD** | $52,974.50 |
|---|---|---|---|---|

and the Court further

      **ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Syracuse, New York
Dated: August 29, 2011

Frederick J. Scullin, Jr.
Senior United States District Court Judge